Good morning. Good morning. May it please the Court, my name is Jason Steed. I represent the Plaintiff Appellant, Mr. Ken Williams, in this case. And I'd like to reserve three minutes of my time for a rebuttal. This is an appeal from a summary judgment on Mr. Williams' claims against the State Defendants for inadequate medical care. There are essentially two questions before the panel in this case. The second question is whether the district court correctly applied the Supreme Court's decision in Estelle v. Gamble when it decided that the decision not to order an MRI for Mr. Williams could not, as a matter of law, constitute deliberate indifference on the part of the defendants and therefore granted summary judgment for the defendants. Basically, Mr. Williams presented evidence, extensive evidence, that he had complained repeatedly about severe pain in his back and hip and buttocks. The problem is they've come up with evidence from doctors who says he didn't need an MRI at that time. I don't see anything from a doctor saying otherwise. Well, that's right. Other than the evidence after he was transferred from that, from defendant's care, where the doctors immediately ordered an MRI. Well, not immediately. That's not exactly right. I mean, they didn't immediately order it. They ordered another X-ray, and then they noted changes in that X-ray. Yeah. Okay. So, I mean, getting back to the time that he's complaining about, I don't see anything in the record from any doctor who says at the time that he was complaining at the first prison, they should have done an MRI. I think that's right. There's not a doctor saying he needed an MRI, if that's what you're saying. You know, I'm saying that they have doctors who says he didn't need it. Right. You don't have any doctors saying he did need it at that time. That's true. Well, does it matter also, too, that it's a back problem? That, I mean, back problems are some of the most common and elusive in terms of being able to give people relief. I mean, that, you know, I'm not saying we go by our common experience, but it's not as if you have, like, your brain's oozing out of your head and something needs to be done. You know, probably 99% of the people suffer from a back problem at one time or another and go to the doctor, you know, over a period of years, and maybe at some point they go to surgery and the surgery doesn't work or any number of things. So that, you know, on deliberate indifference with a back problem, it's not that they didn't do anything. They didn't do what he thought they should do. So does that, how do we, giving him all inferences, how is that deliberate indifference? I think that that's the argument that the State is making, that he didn't do what, or the doctors didn't do what he wanted them to do, and that that's not enough to be deliberate indifference. And that's why I'm presenting that as really the second question before the panel, the question whether the MRI itself and the decision not to order the defendants, whether that's correct, is second to the question of whether there's any other basis for finding deliberate indifference on the part of the defendants. As we explained in our briefing, the, we cited numerous cases for the proposition that the failure to adequately respond to complaints of severe pain can itself be evidence of deliberate, to support a finding of deliberate indifference. And we cite- They failed to adequately respond. That's what I'm saying. It looks like all the medical evidences, they did what was reasonable under the circumstances. Well, the evidence shows that Mr. Williams complained repeatedly about the pain, complained that the treatment they were providing wasn't working. He complained repeatedly that the medication was ineffective. He complained that the exercises they were recommending weren't working or that he couldn't even do them because he was in too much pain to do them. He complained, he did request an MRI repeatedly for, to properly diagnose his condition. But the point is that for two, nearly two years, he was complaining repeatedly, some might say incessantly, about the severe pain he was in. Well, I guess, but if you wouldn't be able to necessarily, if you weren't, you wouldn't necessarily be able to make a med mal claim based on what you have here just because someone complains and they do things that don't particularly work without an expert, how can you make a deliberate indifference, which is considerably higher? Well, the cases that we've cited say that if there's evidence showing that the prisoner is complaining of pain and or that he's complaining that the treatment is ineffective or there's reason for the defendants to know or believe that the treatment is ineffective or they know that he's in pain and they fail to do anything to improve his condition or to remedy his pain if they allow his pain to go un-remedied. And the cases we cited, it was the failure to adequately respond to pain in three days or the failure to adequately respond to pain in five days or the failure to adequately respond over the weekend, even if it was an emergency. Those cases were saying... So what were the injuries in those cases? In one case it was, I believe, an ankle injury. I think another case it was a thumb injury. One case it was an IV. The official had put an IV into the prisoner's arm and the prisoner immediately complained of the pain from the IV and the official didn't respond and the court said those allegations of a failure to respond to those complaints of pain could be enough or are sufficient to state a claim for inadequate medical care. It could be enough to find deliberate indifference. Here we've got evidence that he's complaining for nearly two years about this pain and that the things that they're doing are inadequate. And we cited other cases that said that adhering to an ineffective course of treatment or a pattern of doing so and failing to change anything or do anything more to remedy the prisoner's condition can be evidence of deliberate indifference and inadequate care. What, if anything, do we make of Williams' recounting of Dr. Becker's, I'll call it somewhat unusual, prescription for handling his pain late on in this process? What do we make of it? Does it help your case at all? Yes, that's... In what way? That's additional evidence. We cited some cases that show that if there's evidence that shows that the officials are exhibiting open hostility to the prisoner, treating the prisoner like a nuisance rather than a patient, that evidence can also support a finding of deliberate indifference, that rather than responding to the prisoner like a patient and attempting to adequately address the pain that he's complaining of, rather than doing that, instead saying nobody can help you, there's nothing we can do, or saying what Dr. Becker said in that particular case, that can be evidence of deliberate indifference. Or rather saying what Williams says Dr. Becker said. Right. But it's not been disputed by the defendants that he said that. So, again, the point is all of these things, even if the district court is right about the MRI, which we don't think it is in terms of categorically saying the decision not to order a test can never be, can never constitute deliberate indifference. In fact, the Eleventh Circuit case that the defendants address in their response, I think it's the Mandel case, they talk about how in that case the decision not to order an X-ray, the Eleventh Circuit said the decision not to order an X-ray could be deliberate indifference because it was so obvious the X-ray was needed. And the defendants ---- But there was an obvious break there, right? What's that? Was there a break, a claim of a broken bone? It was, I believe, I want to say it was a broken hip or something like that. You're down to about a minute and change. Do you want to wrap up and say? Yeah. So bottom line, our contention is even if the MRI decision is correct, there are all these other bases for potentially finding deliberate indifference if the evidence is construed in Mr. Williams' favor. Thanks, Mr. Steeve. May it please the Court. Rebecca Otten on behalf of the defendant respondents. The issue in this case is whether the record creates a genuine issue of material fact as to deliberate indifference. Now, you rely a lot. A plaintiff really doesn't. Are they required as a matter of law to have an expert to survive summary judgment in deliberate indifference cases? Not necessarily in all cases. Certainly there are cases where an injury is so obvious and the lack of treatment is so obvious as to show that the defendant was subjectively aware of a substantial risk of serious harm. What's the pro se supposed to do in this situation? I think this pro se did ask for an expert early on, and that was denied, and it's not on appeal before us. But is that a little bit unfair in terms of you can go out and hire experts, you know, they can barely get phone calls? Well, that's the situation we're in. I mean, all of the ‑‑ I mean, there's multiple experts in this case. All of the doctors at the prison, an independent expert hired by the State, and the doctor who ultimately ordered the MRI all agree. So at your position, in this case, he would have to have an expert to create a triable issue? As to whether he needed an MRI, yes. There's a layperson cannot ‑‑ I mean, the simple fact that he complained over and over again and that he thinks he needs an MRI is not sufficient to meet the high standard of deliberate indifference, which is to show that the defendants knew that he needed an MRI and refused to give it to him. Judge Fletcher made an allusion to the vulgar comment that the doctor made. What do you make of that? Well, first, I'd just like to make clear that the defendants don't concede that he said that, of course. It's summary judgment, and so accepting that is true for purposes of summary judgment. It needs to be viewed in the context of the treatment that Dr. Becker provided. And looking at the treatment he provided from June to November of 2009, which is when Mr. Williams was complaining of back pain and hip pain, that treatment was entirely appropriate. He prescribed exercises, medications, an X-ray. Then in April of 2010, so five months later, when Mr. Williams has not been complaining to Dr. Becker of back pain, and in fact, he filed a grievance in February of 2009 that he didn't intend complaining of back pain, but between November and February he didn't make any complaints at all of lower back pain, given that, you know, it had been five months since he'd made any complaints that Dr. Becker had adequately treated his complaints when he made them, the fact that he made an unprofessional, inappropriate comment does not show that he was substantially – he was aware of a substantial risk of serious harm to the plaintiff. But it does suggest a certain amount of, at the very least, impatience, perhaps hostility. I would agree with you that it shows some impatience. Of course, this is a patient who has been repeatedly asking for an MRI when every doctor who has seen him has said you don't need an MRI, and he refuses to take. And if you look at the – when he saw the other doctors in March of 2010, they said he's refusing to listen to Dr. Becker, he's inappropriate in responding to, you know, my answers to his questions, he's not clear in what his complaints are. And so, yes, perhaps Dr. Becker was frustrated with him, but that doesn't mean that he needed to prescribe an MRI when one was not indicated. Is there any evidence in the record telling us whether Mr. Williams has suffered permanent damage as a result of the delay in getting the surgery for the stenosis? There's no medical evidence that I'm aware of. There's plaintiffs – I believe, you know, he filed a declaration or his complaint where he states that he has suffered severe problems from the delay in treatment, but there's no – I think he says he's been told that he has suffered damage as a result. That may be true. I'm not – I'm not sure. I think we have to take for the moment that as a given, that the delay in treatment has resulted in some damage. Now, how much, it's a little unclear. Assuming that's true does not mean that the defendants were aware of that risk. Let me come back to the question that Judge Callahan raised, and I'm not sure there's a very good way around it. We have pro se plaintiffs in the prison who are not in a position to finance their own experts, and the jail – the employees of the prison are unlikely, except in an extreme case, to sort of rat out their colleagues and say, you know, that was a perfectly miserable diagnosis and so on. So he's in a kind of a hard spot because he's arrayed against a whole lot of experts, all of whom are in the employee of the state. Is there some way – is there some way to even the playing field? I mean, we have – he has pro bono counsel right now, which he did not have below. Right. But I'm thinking maybe he needs a pro bono doctor, too. Well, the district court can't appoint a doctor. That's true. It was denied here early in the proceedings before the summary judgment proceedings kind of boiled it down to an expert, and it's not on appeal here. But I think under proper circumstances, if it were brought in, you know, when it was timely appropriate, the district court would have the authority to do it, whether a district court would or whether if we reviewed that. That's correct. What about – what's the panel to infer from the temporal proximity between Mr. Williams' departure from state penitentiary and his diagnosis for spinal stenosis? Is it a coincidence that his spinal stenosis was diagnosed so soon after his transfer? Well, there's a couple. I mean, I think you can make some inferences from the temporal proximity. You could make an inference. There's a couple things to keep in mind. One, the last time he saw any of the defendants for his back pain was in April of 2010, and he was transferred in September. So, you know, he sort of – he saw an unidentified provider in August of 2010 and September of 2010 at OSP, and they noted that his condition had gotten worse. And so – Well, he's sort of damned if he does and damned if he doesn't, because on the one hand you say, well, he didn't complain for a while. But then on the other hand, the man is branded as a complainer, whatever he does. You know, you're a complainer without good reason, but then you say, well, he didn't complain from April until he went. So, well, I mean, repeatedly asking for an unnecessary test and refusing to listen to your doctor's advice when you have multiple doctors, I don't know. Well, it's kind of like the person on the gravestone that it says, I told you I was sick. You know, that's the – eventually there was an indication that he needed an MRI. The question is really, is it deliberate indifference? But in the interim, he is really pretty much damned if he doesn't, you know, it's – he's getting on everyone's last nerve, so if he keeps going in there. But then on the other hand, then you come in and you argue, well, we didn't hear any complaints from him since April. Well, I don't think there was any indication that, you know, he was getting on people's last nerve and so he wasn't receiving treatment or that he had any problem with getting on people's last nerve. I think he had no problem complaining repeatedly. The issue is before September of 2010, there was no objective evidence of the need for an MRI. He wasn't – you know, his legs weren't giving out on him. He was able – you'll see if you look through in multiple appointments, they did range of motion tests. He was able to walk around the exam room, get on and off the table. And so the mere fact that he's complaining over and over again that it hurts is not enough to need an MRI. And that combined with the fact that for several months apparently it's not bad enough that he's even going to a sick call further shows that, you know, there was not this serious severe need for an MRI that he claims was there. On the question of whether there's an expert, you know, that he has access to experts and so forth, my understanding is Dr. Stanford was not an employee of the Department of Corrections. Is that right? I believe he was hired independently by the Department. Was he a doctor in private practice in Oregon somewhere? I believe so. I'm not 100 percent sure. But he wasn't one of the doctors at the prison, certainly, who was treating. Right. Okay. Anything else? No, unless the Court has further questions. Thank you. Thank you. Mr. Steed, you have about a minute and a half left. Just real quickly, the question on expert is maybe a bit of a red herring. There's no requirement that the prisoner has to have an expert to testify to what his medical condition is or anything like that. What we're really talking about here is objective evidence that an MRI was necessary. And the Seventh Circuit actually addressed that in the Greeno case that we cited, I think in our reply brief. What the Seventh Circuit said is there's often no objective evidence for the cause of the pain that's being complained of. And, in fact, sometimes seeking a test is an attempt to seek objective evidence for why the prisoner is in pain. What we're worried about here is Mr. Williams complained, and the defendants are conceding openly, he complained a lot about how serious his pain was and how much pain he was in. And rather than just do a test to find out what's going on, and they've also, by the way, conceded that only an MRI would diagnose this problem. An X-ray wouldn't do it. A regular exam wouldn't do it. Only an MRI can diagnose this. Do we have anything in the record that tells us the relative expense of an X-ray compared to an MRI? No. I mean, I think we know an MRI is significantly more expensive. But the point is his condition was getting worse. They mentioned that he didn't, and I see I'm out of time, but you mind if I finish? Finish your thought. They mentioned that he didn't, he wasn't going to the doctor those last few months. It wasn't because he wasn't in his pain. He had given up. He had been going and complaining over and over and over again and getting nowhere. He filed his suit in June or July. His last visit was, I believe, April. He filed suit in June or July before leaving defendant's care to complain about the fact that nobody was doing anything for him. And that's why he wasn't going to the doctors. Thank you. Thank you very much. The case just argued is submitted. Mr. Steed, we want to thank you and your firm for taking this pro bono case. We appreciate it very much.
judges: Silverman, Fletcher, Callahan